IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 7:20-cr-00046 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| JAMES C. JONES, JR. ) | Chief United States District Judge |
| ) | |
| ) | |

## MEMORANDUM OPINION

This matter is before the court on defendant James C. Jones, Jr.'s motion in limine to exclude the testimony of his former counsel, Brian Stolarz, and to exclude certain evidence regarding documents that the government plans to introduce at trial under Federal Rule of Evidence 410. ECF No. 55. For the reasons explained below, the motion is **GRANTED**.

### I.

Jones was charged on a twelve-count indictment. Superseding Indictment, ECF No. 39. The motion before the court concerns Counts Three, Four, and Five of the indictment, Mot. in Lim., ECF No. 55, which charge Jones with obstruction of justice in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 2, making false statements in violation of 18 U.S.C. § 1001(a)(3) and 18 U.S.C. § 2, and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and 18 U.S.C. § 2. Superseding Indictment, ECF No. 39, at 10–11.

The charges arise out of Jones's actions as owner of Lifeline Ambulance Service, Inc., a company that provided patient transport and paramedic services. Gov't Resp. in Opp'n, ECF No. 66, at 1. While Jones withheld trust fund taxes from his employees' wages, he allegedly did not pay those taxes to the IRS. Id. In May 2009, an IRS agent attempted to collect

the outstanding taxes. Id. Jones subsequently arranged two real estate transactions that transferred substantial assets from his domestic holding company, Falling Branch Properties, LLC, to an offshore account in Saint Maarten. Id. at 2. The government charges that this was done to prevent the IRS from reaching his assets. Id. This transfer allegedly involved preparing and using false documents including deeds of trust, promissory notes, and letters showing indebtedness. Mot. in Lim., ECF No. 55, at 4.

In February 2013, Jones provided several of these documents to IRS-Criminal Investigation Special Agents during the IRS investigation to allegedly demonstrate that the transactions were legitimate and "foreclose the IRS's collection efforts through these properties." Gov't Resp. in Opp'n, ECF No. 66, at 2-3. The government alleges that those documents included: 1) a fictitious term note purporting to document a $270,000 loan from Marine Holding (a company doing business in Saint Maarten) to Jones's Falling Branch entity; 2) a false Deed of Trust purporting to secure the $270,000 loan to the Lifeline business address later "sold" to Marine Holding; 3) a false letter signed by Marine Holding's ostensible "CFO" Tony Cabeceira purporting to document a balance of $599,919.67 owed to Marine Holding; 4) a fictitious promissory note allegedly documenting a $400,000 loan from D.M. (an anonymized witness) to Jones; 5) a fictitious term note that purportedly documents the same D.M. loan; and 6) a fictitious deed of trust securing the promissory note to one of the real properties. Id. at 2-3. Jones became the subject of a criminal investigation upon the IRS's determination that these documents were fraudulent. Mot. in Lim., ECF No. 55, at 4.

The government began investigating Jones in February 2015, id. at 4, at which point Jones retained Brian Stolarz as counsel, Gov't Resp. in Opp'n, ECF No. 66, at 3. In 2017, the

government sent Stolarz a plea agreement containing a proposed statement of facts for Jones. Mot. in Lim., Ex. 3, ECF No. 55-3, at 16–18. Stolarz met with Jones, and Jones provided Stolarz with documents to contest the government's statement of facts. Id. 19–20. Stolarz met with the government in response to the plea offer. Mot. in Lim., ECF No. 55, at 4.

The government determined that the documents Jones provided via Stolarz during these meetings were fraudulent and sought to compel the testimony of Stolarz before a grand jury. Gov't Resp. in Opp'n, ECF No. 66, at 4. Stolarz produced the requested documents and testified before the grand jury on January 17, 2019. Id. at 4–5.

The court held a hearing on this motion on October 21, 2022.

## II.

In his motion, Jones argues that Stolarz should not be permitted to testify at trial about these documents he provided to the government because his testimony would violate Federal Rule of Evidence 410, which bars admission against a defendant of statements "made during the course of plea negotiations with an attorney for the prosecuting authority if the discussions did not result in a guilty plea." Fed. R. Evid. 410(a)(4). He argues that, here, the government made a specific plea offer that included a draft factual basis, and that Jones responded to this through counsel by offering documents and making statements to "rebut matters included in the statement of facts." Mot. in Lim., ECF No. 55, 13. These statements and documents, he argues, are protected by Federal Rule of Evidence 410.

The government makes two primary arguments in response. First, it argues that the purpose of producing the documents at issue was to convince the government not to charge Jones and thus did not constitute plea discussions. Gov't Resp. in Opp'n, ECF No. 66, at 7.

3

Second, it argues that Stolarz's production of documents was not a "statement" made during plea negotiations. Id. Thus, the government contends, Rule 410 does not apply.

The court finds first that the conversations between Jones, Stolarz, and the prosecutors constitute plea discussions for purposes of Rule 410. "To determine whether a discussion should be characterized as a plea negotiation the trial court must 'determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.'" United States v. Merrill, 685 F.3d 1002, 1013 (11th Cir. 2012) (citing United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978)).

As to whether the "the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion," Merrill, 685 F.3d at 1013, Stolarz's grand jury testimony strongly suggests that Jones subjectively believed that Stolarz's discussions with the government on his behalf were, at least in part, plea negotiations. Stolarz testified that the government "communicat[ed] a Plea Offer to Mr. Jones" that contained a "Proposed Plea Agreement, information and Draft statement of Facts"; that he "communicate[d] the fact that the Government was giving Mr. Jones the opportunity to plead guilty"; that Mr. Jones "provided . . . documents [and] information" in response to the plea offer; and that Stolarz had several "back and forth[s]" with both Jones and the prosecution about the plea agreement and statement of facts. Mot. in Lim., Ex. 3, ECF No. 55-3, at 16–20. This subjective belief was also objectively reasonable. See Merrill, 685 F.3d at 1013 (citing Robertson, 582 F.2d at 1366). Indeed, the purpose of the meetings was to "review the Statement of Facts provided by [the government]" and for Jones to "provide [Stolarz with] documents and facts to

4

counteract or show the version of the facts that [they] were going to present to the government." Mot. in Lim., Ex. 3, ECF No. 55-3, at 22. It was certainly reasonable to view the exchange of information and documents in response to a plea offer as plea discussions.

While Stolarz "attempt[ed] also to try to convince [the government] not to charge Mr. Jones," id. at 23, that does not invalidate the remainder of the discussions that involved the plea offer. This case is distinct from those that the government puts forth in favor of their argument because, here, the parties were discussing and negotiating a written plea offer and statement of facts. See United States v. Cunningham, 723 F.2d 217, 228 (2d Cir. 1983) (Rule 410 did not cover discussions that occurred in meeting where the defendant "stipulated that anything he said could be used against him by a grand jury or in any subsequent proceeding and that if he made a false statement of fact he could be prosecuted for perjury"); United States v. Abhishek Krishnan's Real & Pers. Prop., 469 F. Supp. 3d 481, 491–93 (E.D.N.C. 2020) ("The government in this instance [was] not relying upon the admission of the substance of any statements made by [the defendant] during plea discussions with [the AUSA]. Instead, the government relies upon email exchanges between [defendant's] counsel and counsel for the government to demonstrate" that defendant was avoiding prosecution in violation of the fugitive disentitlement statute.); United States v. Kerik, 531 F. Supp. 2d 610, 612–19 (S.D.N.Y. 2008) (holding that Rule 410 was not applicable to statements made in a meeting that did not involve any written plea offers or statement of facts and where the defendant pleaded guilty).[1]

---

[1] The government also submitted as supplemental authority United States v. Drummond, 15 F.3d 1091 (9th Cir. 1993), an unpublished opinion, for the proposition that a court has found "no plea discussions, in part, because [there was] no evidence that the defendant 'ever pled or offered to plead guilty.'" Id. at *3 (citing United States v. Doe, 655 F.2d 920, 925 (9th Cir. 1980)). ECF No. 76-1. Drummond is distinguishable because the court found that, in contrast to Stolarz's testimony here, counsel in Drummond had no reasonable good faith belief that he was engaged in plea discussions.

5

This court also finds that the evidence at issue constituted "statements" for purposes of Rule 410. While Rule 410 does not provide a definition of "statement," the Federal Rules of Evidence do provide a definition elsewhere as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).[2] See Pereira v. Sessions, 138 S. Ct. 2105, 2115 ("[I]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." (quoting Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560, 571 (2012))). The key to whether nonverbal conduct is a statement is whether it was "intended to be one." Fed. R. Evid. 801 advisory committee notes. For example, courts have considered pointing by a witness to be a statement when it was clearly intended as an assertion. See United States v. Abou-Saada, 785 F.2d 1, 8 (1st Cir. 1986) & United States v. Ross, 321 F.2d 61, 69 (2d Cir. 1963) ("[T]he pointing [to a list] was as much a communication as a [verbal] statement that '[t]his is a list . . . would have been.'"). The Virginia Supreme Court found the nonverbal conduct of handing clothing to a police officer to be a statement because it was in "in response to the question of [an] officer as to what the defendant was wearing. . . ." Stevenson v. Commonwealth, 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977). And at least one court has referred to a written document that "include[d] defendant's assertions . . . entitled 'Chronology'" provided to the government during a proffer session as "statements." United States v. Jasin, 215 F. Supp. 2d 552, 582 & n.23 (E.D. Pa. 2022) ("[T]he [c]ourt's references to 'defendant's statements' incorporate those statements made to the government *in documents*,

---

[2] As congressional enactments, the Federal Rules of Evidence are subject to the "traditional tools" of statutory interpretation to establish their meaning. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 163 (1988).

6

including the Chronology." (emphasis added)).

Here, Jones was communicating that the documents contained material information related to the plea discussions and that they contained the facts that he believed should be in the statement of facts. This communication was in direct response to the government's proposed statement of facts, and it was clearly intended to assert Jones's response to their characterization of the events at issue. This conduct was as much "assertion" as if he had read the contents of the documents aloud. As such, it falls within the purview of Rule 410.

### III.

In this case, defendant Jones provided his counsel with documents in response to a written plea offer and statement of facts in an effort to persuade the government to accept those facts. The production of the documents inextricably intertwined with and resulted directly from the government's plea offer and proposed statement of facts. As such, the production of the documents by Jones's counsel to the government must be considered as part and parcel of statements made during plea discussions. Therefore, this conduct is covered by Rule 410. Therefore, Jones's Motion in Limine, ECF No. 55, is **GRANTED**.

An appropriate order will be entered.

Entered: November 3, 2022

Digitally signed by Michael F. Urbanski   Chief U.S. District Judge
Date: 2022.11.03 12:02:29 -04'00'

Michael F. Urbanski
Chief United States District Judge